**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2076**

In re:  JOHN HENRY MOORE,

Petitioner.

On Petition for Writ of Mandamus.  (3:19-cr-00086-RJC-DSC-1)

Argued:  January 30, 2020                                              Decided:  April 9, 2020

Before KING, HARRIS, and RICHARDSON, Circuit Judges.

Petition denied by published opinion.  Judge Harris wrote the opinion, in which Judge King and Judge Richardson joined.

**ARGUED:**  Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Petitioner.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Respondent.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, John Parke Davis, First Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Petitioner.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Respondent.

PAMELA HARRIS, Circuit Judge:

Judge Robert J. Conrad was to preside over the criminal trial of John Henry Moore when the parties learned that Judge Conrad had prosecuted Moore successfully for bank robbery in 1989. If Moore's current trial ends in conviction, then the facts surrounding his 1989 bank robbery conviction could become relevant at sentencing. Moore therefore sought Judge Conrad's immediate, pre-trial recusal under the judicial disqualification statute, *see* 28 U.S.C. § 455, arguing that Judge Conrad had personal knowledge of facts that might be disputed at sentencing and that his impartiality reasonably could be questioned. Judge Conrad denied the motion.

Moore then filed the petition for a writ of mandamus we consider today, asking that this court direct Judge Conrad to recuse from presiding over his criminal trial. We share Moore's concern that there could come a point at which recusal might be required, and certainly would be appropriate. But we conclude that the extraordinary relief of mandamus is not warranted now, primarily because Moore has failed to show a clear and indisputable right to immediate recusal based on grounds that involve a future sentencing and may never materialize. We thus deny Moore's petition.

## I.

Moore was indicted by a grand jury on two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951, one count of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). For present purposes, what is most

2

important about these charges is that if Moore is convicted, he could face a mandatory life sentence under the federal "three-strikes" statute. *See* 18 U.S.C. § 3559(c)(1).

Under the three-strikes law, a district court must impose a life sentence if a defendant is convicted of a "serious violent felony" and has two or more prior convictions for serious violent felonies. 18 U.S.C. § 3559(c)(1); *see United States v. Thompson*, 554 F.3d 450, 451–52 (4th Cir. 2009) (describing three-strikes law). It is not disputed that at least one of the current charges against Moore could qualify as a "serious violent felony." And the government has filed a "three-strikes notice" asserting that Moore indeed is subject to a mandatory life sentence if convicted, citing three predicate "serious violent felonies" in the form of three federal bank robbery convictions, including one from 1989. J.A. 18.

Whether a prior conviction is a "serious violent felony" – a strike for three-strikes purposes – is decided by the district court at sentencing. *Thompson*, 554 F.3d at 452. In this case, the district court also may determine whether the statute's so-called "safety valve," 18 U.S.C. § 3559(c)(3)(A), would allow Moore to avoid an otherwise mandatory life sentence. Under the safety-valve provision, a robbery – like Moore's prior bank robberies – does not qualify as a predicate "serious violent felony" if the defendant establishes, by clear and convincing evidence, that it did not involve the use or threatened use of a firearm or other dangerous weapon and did not result in death or serious bodily injury to any person. *See id.* If Moore is convicted at trial, in other words, he may avoid a life sentence if he can show that the facts surrounding at least two of his prior bank robberies bring those convictions within the safety-valve provision.

3

Two weeks before Moore's jury trial was scheduled to begin before Judge Robert J. Conrad, the government informed the court and the defense that one of those prior bank robberies – the one for which Moore was convicted in 1989 – apparently was prosecuted by Judge Conrad, then an Assistant United States Attorney ("AUSA"). Neither party then had access to the full case file for Moore's 1989 conviction, and that record was not filed before Judge Conrad. But the docket sheet showed that "Robert J. Conrad, Jr." was listed as the sole AUSA on the 1989 case and that he appeared on behalf of the government in multiple hearings – including those at which Moore entered his guilty plea and was sentenced – and there is no dispute that Judge Conrad indeed represented the United States in its 1989 bank robbery case against Moore.

In response, Moore moved for Judge Conrad's immediate recusal, arguing that the judicial disqualification statute, 28 U.S.C. § 455, prohibited Judge Conrad from presiding over his trial. As Moore explained, if he is convicted of all the current offenses, then under the safety-valve provision of the three-strikes law, the facts surrounding his 1989 bank robbery could become both relevant and contested, requiring Judge Conrad – who prosecuted that bank robbery – to adjudicate whether the robbery involved the use or threatened use of a firearm and whether it resulted in death or serious bodily injury. *See* 18 U.S.C. § 3559(c)(3)(A).

According to Moore, recusal therefore was required under 28 U.S.C. § 455(b)(1), which covers cases in which a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." Moore also argued for disqualification under § 455(a) – a judge "shall disqualify himself in any proceeding in which his impartiality might

4

reasonably be questioned" – on the ground that Judge Conrad's impartiality in reviewing the nature of the 1989 bank robbery that he prosecuted would be open to reasonable question.[1] "[T]o the extent a serious question arises [at sentencing] regarding whether there was evidence of a dangerous weapon or threat in the 1989 case," Moore contended, Judge Conrad's personal impression of the case, acquired as a prosecutor, inevitably would compete with the arguments of the parties. J.A. 23.[2] Although the 1989 bank robbery at the heart of Moore's motion would become relevant, if at all, only at sentencing, Moore sought Judge Conrad's immediate recusal from any further proceedings in his criminal trial. The government took no position on Moore's motion.

In an oral ruling from the bench, Judge Conrad denied the motion for recusal. Based on the docket sheet, Judge Conrad explained, he had no memory of the 1989 bank robbery, which he had prosecuted "[s]ome 30 years ago." J.A. 31. And in any event, Judge Conrad reasoned, Moore's motion did not "affect in any way the *trial* aspects of this case. It comes

---

[1] The relevant sections of 28 U.S.C. § 455 read in full:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

[2] Before the district court, Moore also sought disqualification under 28 U.S.C. § 455(b)(3), covering certain cases in which a judge has served as government counsel in a proceeding. Moore has not pressed that claim in his petition for mandamus, and we do not address it here.

into play if there is a conviction and that prior conviction becomes relevant, if at all, with respect to *sentencing*." J.A. 32 (emphasis added).

Moore then petitioned this court for a writ of mandamus directing Judge Conrad to recuse from his criminal trial. We granted a stay of Moore's criminal proceedings pending a decision on the petition, directed the government to file an answer, and invited the district court also to address the petition. The government opposed Moore's petition, and the district court reiterated its view that recusal was not warranted. We also directed the parties to file a supplemental joint appendix containing the full record of Moore's 1989 prosecution. *See* S.J.A. 1–45.

## II.

Moore's central argument is this: If he is convicted, then at sentencing, the facts surrounding his 1989 bank robbery might become relevant and the source of dispute under the safety-valve provision of the three-strikes law. Were that to happen, 28 U.S.C. § 455, the judicial disqualification statute, would require the recusal of Judge Conrad, who prosecuted the 1989 bank robbery. And – the final and critical step – based on that potential ground for disqualification at sentencing, Judge Conrad is required to recuse himself now, pre-trial, as a "prophylactic" measure; a partial recusal at sentencing, should it become necessary, is not enough to satisfy § 455.

The government takes issue only with the last step of Moore's reasoning. It does not argue that Judge Conrad could preside over Moore's sentencing if events transpire as Moore hypothesizes, so that Judge Conrad would be required to make findings about a

6

bank robbery he personally prosecuted. But recusal *now*, the government argues, is not required: § 455 does not demand recusal pre-trial whenever grounds for disqualification might emerge at sentencing, and there will be time enough to consider recusal if and when the details of Moore's 1989 bank robbery actually become relevant to his sentencing. Moreover, the government contends, the speculative basis for Moore's claim makes the grant of extraordinary mandamus relief especially inappropriate.

We agree with the government that mandamus relief is not warranted in this posture. This is not a direct appeal, in which we would review a judge's recusal decision under the ordinary abuse-of-discretion standard. *See United States v. Stone*, 866 F.3d 219, 229 (4th Cir. 2017). Instead, Moore is seeking a writ of mandamus, "a drastic remedy that must be reserved for extraordinary situations." *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (internal quotation marks omitted). So to prevail here, Moore must show not only that 28 U.S.C. § 455 requires a judge's immediate recusal from a criminal trial where grounds for disqualification might arise at sentencing, but also that he has a "clear and indisputable" right to that relief. *Id.* (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)). He also must demonstrate that he has "no other adequate means" – such as direct appeal after conviction – to attain the desired relief. *Id.* And even then, we must be satisfied, in the exercise of our discretion, that the writ is "appropriate under the circumstances." *Id.*

Moore cannot meet this high standard. Most importantly, he cannot show a "clear and indisputable" right to Judge Conrad's immediate recusal in response to grounds for disqualification that might never materialize. We may assume, for present purposes, that

7

§ 455 would require Judge Conrad's recusal if the "evidentiary facts" surrounding Moore's 1989 bank robbery became "disputed" at sentencing, 28 U.S.C. § 455(b)(1), or that otherwise his "impartiality might reasonably be questioned," 28 U.S.C. § 455(a).[3]  But as the government explains, at this time, it is entirely uncertain whether that will come to pass. There can be a "dispute" over facts related to the 1989 bank robbery, *see* 28 U.S.C. § 455(b)(1), only if each of the following occurs:  Moore is convicted at trial of a "serious violent felony" triggering the federal three-strikes law; the government continues to pursue a mandatory life sentence under that law; Moore invokes the law's safety-valve provision; and as part of that effort, which would require Moore to show that two of his three prior bank robberies involved neither the use of a dangerous weapon nor death or injury, Moore puts at issue the facts surrounding his 1989 bank robbery.  If any of those events does not occur, then the grounds for disqualification never will materialize.

Under those circumstances, there is no "clear and indisputable" right to the relief Moore is seeking:  Judge Conrad's immediate recusal from all parts of Moore's criminal trial.  According to Moore, recusal at sentencing, if and when his 1989 bank robbery becomes relevant, is not sufficient under § 455; that kind of partial recusal would be

---

[3] In resolving Moore's petition, we assess § 455(a) and § 455(b)(1) together because he contends that both provisions require pre-trial recusal for the same reason – that is, a factual dispute regarding the 1989 bank robbery might arise at sentencing.  We emphasize, however, that the standards governing recusal under § 455(a) and § 455(b) are materially different.  *See United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) ("Obviously, it is possible for facts to indicate that a judge *might* be biased such that recusal is required under § 455(a) even though none of those facts indicates actual bias necessitating recusal under § 455(b).").

8

inconsistent with the statute's terms, which mandate disqualification from an entire "proceeding." *See* 28 U.S.C. § 455(a) ("Any . . . judge . . . shall disqualify himself in *any proceeding* in which his impartiality might reasonably be questioned." (emphasis added)); *United States v. Feldman*, 983 F.2d 144, 145 (9th Cir. 1992) (§ 455 "speak[s] of a federal judge being reassigned or disqualified from a 'proceeding'" so "recusal must be from a whole proceeding"). Moore's view is not without support. In *Murray v. Scott*, 253 F.3d 1308 (2001), on which Moore principally relies, the Eleventh Circuit adopted a similar position, ruling – on direct appeal, not a petition for a writ of mandamus – that recusal was required under § 455 even though the ground for disqualification would materialize, if at all, only after decision of a threshold issue. "[W]hen a district judge considers recusal, he must consider his potential conflict with regard to the overall case, not just his potential conflict for each separate issue or each stage of the litigation." *Id.* at 1310–11 (citation omitted). The fact that the evidence giving rise to the recusal issue might or might not become relevant later in the proceedings – "depending on how [the judge] resolved the threshold issue" – did not relieve the judge of his obligation to recuse from the entire case. *Id.* at 1311. And at least one other circuit has come to a similar conclusion, rejecting partial recusal as a remedy under § 455. *See Feldman*, 983 F.2d at 145 (holding "that recusal from only a portion of the proceedings . . . is not permitted under the recusal statutes").

But that is not the end of the matter, because other circuits have disagreed and endorsed partial recusal under § 455, at least in certain circumstances. *See Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002) (describing circuit disagreement on partial recusal and "majority view" allowing "such a case-management device"). In *Ellis*, for example, a

district court judge adjudicated several claims raised by a petitioner's § 2255 motion and recused only from the claim accusing him of judicial bias and misconduct. *See id.* at 640–41. The First Circuit approved, holding "that a judge may, in an appropriate case, decide certain issues and recuse himself or herself as to others," balancing "the demands of the recusal statute, 28 U.S.C. § 455(a)," with other interests. *Id.* at 642; *see also Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 84–85 (2d Cir. 1996) (rejecting argument that "once [a judge] decided to recuse himself as a matter of discretion, such recusal had to be total and immediate" under § 455). And our court, too, has approved partial recusal, though in the context of a bankruptcy proceeding governed by distinct rules of recusal. *See United States v. DeTemple*, 162 F.3d 279, 285–86 (4th Cir. 1998). Moreover, the cases approving partial recusal do so where the need for *some* form of recusal is a certainty, not a question mark. Where, as here, the grounds for *any* recusal remain contingent on future events, there may be an even stronger case for partial recusal as a "practical and appropriate" case-management device. *Pashaian*, 88 F.3d at 84; *see Ellis*, 313 F.3d at 641–42.

Given this case law on partial recusal, it cannot be said that Moore has a "clear and indisputable right" to Judge Conrad's immediate recusal from all aspects of his criminal trial. To be clear, in this posture, we have no occasion to reach further and attempt to resolve the division in authority over the general permissibility and propriety of partial recusal under § 455. Because Moore seeks the extraordinary remedy of mandamus, it is enough to say that in this case, any right to recusal before trial – as opposed to recusal at sentencing, should the details of Moore's 1989 bank robbery become relevant and contested – is not indisputable.

10

By itself, that is enough to foreclose mandamus relief. But we note that the other two mandamus factors also weigh against issuance of a writ of mandamus. First, denial of the writ at this time will not leave Moore without a remedy. *See In re Murphy-Brown*, 907 F.3d at 795 (writ will issue only where petitioner has "no other adequate means" to attain relief). If Moore is correct – if Judge Conrad is required to recuse now, and a potential recusal at sentencing would be insufficient under § 455 – then we can remedy Judge Conrad's failure to recuse from Moore's criminal trial on direct review of Moore's conviction and sentence. We recognize that the improper denial of a recusal motion when a judge's impartiality reasonably might be questioned harms not only the defendant, but also the judicial system and the public confidence it enjoys. *See In re Bulger*, 710 F.3d 42, 49 (1st Cir. 2013). But here, on Moore's own account, that potential harm could arise only at sentencing, and then only if all the various contingencies materialize. And that brings us to the third factor, under which we exercise our discretion to determine whether a writ of mandamus is "appropriate under the circumstances." *In re Murphy-Brown*, 907 F.3d at 795. As "one of the most potent weapons in the judicial arsenal," the writ is to be reserved for extraordinary situations. *Cheney*, 542 U.S. at 381 (internal quotation marks omitted). We hesitate to use such a drastic remedy where, as here, the basis for a recusal motion is still hypothetical and speculative.

We hold today only that Moore is not entitled to the exceptional remedy of a writ of mandamus at this time. If Moore is convicted of a qualifying "serious violent felony" under the three-strikes law and his 1989 conviction appears likely to be at issue at sentencing, then Moore may seek recusal again. In considering such a motion, the district court then

11

would have the benefit of the full record from the 1989 case, and we expect that the court and the government would give any such motion the careful attention it would deserve. And nothing would foreclose Moore from petitioning this court again for a writ of mandamus, should that become necessary, at the appropriate time.

**III.**

For the foregoing reasons, the petition for a writ of mandamus is denied.

*PETITION DENIED*